## CAMP ET AL. *v.* GRESS.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 279. Argued March 24, 25, 1919.—Decided June 2, 1919.

Under § 51 of the Judicial Code (Act of 1887–1888, § 1), when an action for damages is brought against several defendants in the district where some of them reside and the jurisdiction of the District Court is founded solely on diversity of citizenship, a codefendant cannot be compelled to submit to the jurisdiction by service in that district if he is a citizen and resident of another State. P. 311. *Smith* v. *Lyon,* 133 U. S. 315.

This construction is confirmed by the reënactment of the subject-matter, already so construed, as part of the Judicial Code, together and in juxtaposition with the provision (Jud. Code, § 52) expressly permitting an action not of a local nature against defendants residing in different districts of the same State to be brought in either district. P. 314.

In what is now Jud. Code, § 50, providing for the exercise of jurisdiction "when there are several defendants . . . and one or more of them are neither inhabitants of nor found within the district in which the suit is brought, and do not voluntarily appear," the words "found within the district" are confined, as a result of the Act of 1887–1888, § 1, (Jud. Code, § 51,) to cases in which the action is brought in the district of the plaintiff's residence. P. 313.

Where an action on contract is brought against resident and non-resident defendants, the exemption of the nonresident from suit, under Jud. Code, § 51, is personal to him and can not be availed of by his codefendants. P. 316.

In an action for damages on a joint contract, all of the obligors are not indispensable parties, and under Jud. Code, § 50, the District Court may render judgment against those over whom it has acquired jurisdiction. P. 316.

In such case, error in assuming jurisdiction and rendering judgment as to all of the joint contractors will not necessitate a reversal as to those properly included, if their interests could not have been prejudiced thereby. P. 317.

Appellate proceedings in this court and in the Circuit Court of Appeals are not affected by the Conformity Act, but are governed entirely by the acts of Congress, the common law, and the ancient English statutes. *Id*

In cases coming from federal courts, this court has statutory power to enter such judgment or order as the nature of the case requires, and by the Act of February 26, 1919, amending Jud. Code, § 269, the duty is especially enjoined of giving judgment in appellate proceedings without regard to technical errors, defects or exceptions which do not affect the substantial rights of the parties. P. 318.

A writ of certiorari to the Circuit Court of Appeals brings up the whole case, including questions affecting the merits, if properly saved, as well as those concerning the jurisdiction of the District Court. *Id.*

A, the owner of all the shares of a corporation, in which, or its assets, no other person was shown to be interested, agreed under seal to convey certain saw-mill property, standing in its name, to a common venture with other parties, who agreed to convey timber lands, and that he and they should share in the venture in stated proportions. Due to their repudiation of their obligation, the saw-mill property depreciated in value; and, it appearing that he was either its equitable owner, independently of his stock ownership, or acted as secret agent for the corporation—*Held*, that A could recover the full damage in an action on the contract, without any accounting and settlement of the corporation's affairs, and that the measure was the whole depreciation, and not merely a part of it proportionate to the other parties' stipulated interest in the proposed enterprise. *Id.*

244 Fed. Rep. 121, reversed in part and affirmed in part.

THE case is stated in the opinion.

*Mr. T. D. Savage* and *Mr. Thomas H. Willcox* for petitioners.

*Mr. D. Lawrence Groner* and *Mr. W. M. Toomer*, with
whom *Mr. Alexander Akerman* was on the briefs, for re-
spondent.

MR. JUSTICE BRANDEIS delivered the opinion of the
court.

Section 51 of the Judicial Code declares that (with ex-
ceptions not here material) "no civil suit shall be brought
in any district court against any person by any original
process or proceeding in any other district than that
whereof he is an inhabitant; but where the jurisdiction is
founded only on the fact that the action is between citizens
of different States, suit shall be brought only in the dis-
trict of the residence of either the plaintiff or the de-
fendant."

Resting jurisdiction wholly on diversity of citizenship,
Gress, a citizen and resident of Florida, brought, in the
District Court of the United States for the Eastern Dis-
trict of Virginia, this action against P. D. Camp, P. R.
Camp, and John M. Camp, alleging them to be citizens of
Virginia and residents of that district. One of them,
John M., filed a "plea to jurisdiction," asking that the
suit be dismissed, because he was not a citizen or resident
of the district in which it was brought, but a citizen of
North Carolina, resident in the Eastern District thereof.
P. D. and P. R. Camp filed a separate "plea to jurisdic-
tion" setting up the same facts, alleging that the cause of
action sued on was joint and inseparable, and denying
jurisdiction as to themselves also, because there was none
as to John M. Camp. The pleas were overruled; the case
proceeded to trial; a verdict was rendered against the
three defendants, and judgment was entered thereon. Ex-
ceptions had been duly taken both by John M. and by
P. D. and P. R. Camp to the decision overruling their
pleas to the jurisdiction, and by the three defendants to
certain rulings at the trial alleged to be erroneous; but

the judgment was affirmed by the Circuit Court of Appeals. 244 Fed. Rep. 121. A writ of certiorari was granted by this court. 245 U. S. 655.

*First.* The several defendants below, although not citizens of the same State, were all citizens of States other than that of the plaintiff. Hence, the diversity of citizenship requisite to federal jurisdiction existed. *Sweeney* v. *Carter Oil Co.,* 199 U. S. 252. The objection of John M. Camp is not to the jurisdiction of a federal court, but to the jurisdiction over him of the court of the particular district; that is, the objection is to the venue. He asserts the personal privilege not to be sued in a district other than that of his residence, since the action is not brought in the district of the plaintiff's residence. If he were a sole defendant, or if none of the defendants resided in the district where suit was brought, the privilege asserted would be supported by the very language of the statute. *Macon Grocery Co.* v. *Atlantic Coast Line R. R. Co.,* 215 U. S. 501. Section 51 of the Judicial Code does not in terms provide for the case where there are several defendants. Does the limitation of jurisdiction to the district of the residence "of either the plaintiff or the defendant" mean also of all the plaintiffs or all the defendants, so that when the several defendants are not all residents of the district in which they are sued, the nonresident may assert the privilege not to be sued therein? The precise question has not been decided by this court; but the construction already given to this section in analogous cases and to analogous provisions in other statutes makes it clear that the privilege asserted should be sustained.

Section 51 of the Judicial Code embodies in substance the Act of March 3, 1887, c. 373, § 1, 24 Stat. 552, as corrected by Act of August 13, 1888, c. 866, § 1, 25 Stat. 433. From the passage of the original Judiciary Act (September 24, 1789, c. 20, § 11, 1 Stat. 73, 79), until 1887, suit could be brought not only in the district of defendant's resi-

dence, but also in any other district in which the defendant was found. The 1887–1888 act accomplished its purpose of restricting the jurisdiction of the federal courts, in part, by limiting the districts in which suit might be brought to that of the defendant's or of the plaintiff's residence. See *In re Keasbey & Mattison Co.*, 160 U. S. 221, 228. In *Smith* v. *Lyon*, 133 U. S. 315, the question was presented whether this limitation prohibited suit in a district in which some, but not all, of the *plaintiffs* were resident. The court felt itself controlled largely by the construction which had been given in *Strawbridge* v. *Curtiss*, 3 Cranch, 267, to a clause of the original Judiciary Act, similar in language and analogous in subject-matter, and had been steadfastly adhered to since. There this court construed the phrase, "where . . . the suit is between a citizen of the State where the suit is brought, and a citizen of another State" as meaning "that where the interest is joint, each of the persons concerned in that interest must be competent to sue, or liable to be sued, in those courts [courts of the United States]." Adopting a like construction, this court held in *Smith* v. *Lyon, supra*, that suit could not be brought in a district in which some, but not all, of the plaintiffs resided. The rule declared in *Strawbridge* v. *Curtiss* had been applied indiscriminately to plaintiffs and defendants; and after the decision in *Smith* v. *Lyon* it was generally assumed in the lower courts that the rule there applied to plaintiffs must likewise be applied to defendants.[1] Compare *Shaw* v. *Quincy Mining*

---

[1] E. g., *Turk* v. *Illinois Cent. R. Co.*, 218 Fed. Rep. 315, 316 (C. C. A., Sixth Circuit); *Excelsior Pebble Phosphate Co.* v. *Brown*, 74 Fed. Rep. 321 (C. C. A., Fourth Circuit); *Revett* v. *Clise*, 207 Fed. Rep. 673, 676 (Wash.); *Schultz* v. *Highland Gold Mines Co.*, 158 Fed. Rep. 337, 340 (Oreg.); *Tice* v. *Hurley*, 145 Fed. Rep. 391 (Ky.); *Lengel* v. *American Smelting & Refining Co.*, 110 Fed. Rep. 19, 21 (N. J.); *Bensinger Self-Adding Cash Register Co.* v. *National Cash Register Co.*, 42 Fed. Rep. 81 (Mo.). But see *Jennings* v. *Smith*, 232 Fed. Rep. 921, 925 (Ga.); *Rawitzer* v. *Wyatt*, 40 Fed. Rep. 609 (Cal.).

*Co.*, 145 U. S. 444; *Geneva Furniture Co.* v. *Karpen*, 238 U. S. 254, 259. The same assumption appears to have been made in *Interior Construction and Improvement Co.* v. *Gibney*, 160 U. S. 217, where the question was raised whether the resident defendant could avail himself of the objection that another defendant, who was a nonresident, was not liable to suit therein. And in *Ladew* v. *Tennessee Copper Co.*, 218 U. S. 357, 364–365, a like rule was applied; for it was there held that, although an alien defendant could be sued in any district where found, an American citizen joined with him as co-defendant could not, without his consent, be sued in a district other than that of his or the plaintiff's residence.

It is said, however, that § 51, if read in connection with § 50 and in the light of their legislative history, shows that it was the intention of Congress to confer jurisdiction over all the defendants found within the district, if one of them resides therein. Section 50,[1] which embodies without substantial change the Act of February 28, 1839, c. 36, § 1, 5 Stat. 321, makes provision for enforcing a cause of action which exists against several persons, although one of them is neither an inhabitant of nor found within the district in which suit is brought and does not voluntarily appear. It does so by permitting the court to entertain jurisdiction without prejudice to the rights of the party not regularly served nor voluntarily appearing. The argument is that, in order to give

[1] "When there are several defendants in any suit at law or in equity, and one or more of them are neither inhabitants of nor found within the district in which the suit is brought, and do not voluntarily appear, the court may entertain jurisdiction, and proceed to the trial and adjudication of the suit between the parties who are properly before it; but the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process nor voluntarily appearing to answer; and non-joinder of parties who are not inhabitants of nor found within the district, as aforesaid, shall not constitute matter of abatement or objection to the suit."

effect to the retention in·§ 50 of the words "found within the district," we must, although these words were omitted from §51, hold that where there are several defendants the court has jurisdiction of all, if one or more are residents of the district and the others are found there. The argument overlooks the fact that § 50 is applicable not only to cases in which the venue is dependent upon the residence of a defendant in the district where suit is brought, but also to those cases in which it is dependent upon the residence of the plaintiff. Ordinarily jurisdiction could be obtained in the district of the plaintiff's residence only over nonresidents; because all of the defendants must be nonresidents in order to satisfy the requirement of diversity of citizenship. And as to these there can be personal jurisdiction only so far as found within or voluntarily appearing within the district. To such persons the term "inhabitants" in § 50 obviously cannot refer. If the provision therein concerning those not "found" had been omitted, a suit would fail in case any one of those who at common law was a necessary party defendant should not be found therein or voluntarily appear. *Shields* v. *Barrow*, 17 How. 130. As the Act of 1887–1888 did not restrict jurisdiction based on diversity of citizenship in those cases where the venue is determined by the residence of the plaintiff, it was appropriate to retain in the earlier statute (now § 50) the words "found within the district," although it had ceased to be operative in cases where the venue is determined by the residence of the defendants.

On the other hand, § 52 of the Judicial Code makes it clear that the construction contended for by defendant is unsound. It provides that where a State contains more than one district a suit (not of a local nature) against a single defendant must be brought in the district where he resides, "but if there are two or more defendants, residing in different districts of the State, it may be

brought in either district." We thus have an express declaration by Congress that under one particular set of circumstances a co-defendant may be sued in a district in which he does not reside. *Expressio unius est exclusio alterius.* This section follows directly after that which contains the general prohibition against suing a defendant in a district other than that in which he or the plaintiff resides, and constitutes one of the specified exceptions to the general prohibition. It shows, therefore, that the prohibition of § 51 expresses the deliberate purpose of Congress that a person shall not be compelled to submit to suit in the federal District Court in a State within which neither he nor the plaintiff resides, although a co-defendant may reside therein. The history of § 52 confirms this conclusion. It is substantially a reënactment of § 740 of the Revised Statutes. After the passage of the Act of 1887–1888 restricting the jurisdiction of the federal courts, considerable doubt arose as to whether the provisions of that act now contained in § 51 of the Judicial Code did not repeal § 740 of the Revised Statutes. Compare *Petri* v. *Creelman Lumber Co.,* 199 U. S. 487.[1] Congress reënacted in the Judicial Code this provision expressly permitting, in States having more than one district, *all defendants resident within the State* to be sued in any district thereof in which one of them resides; while it made no similar provision for the case where the several defendants reside in different States. If Congress, in reënacting the provisions of § 51, had intended that it should establish a rule with reference to defendants resident in different States contrary to the construction placed by the overwhelming weight of authority upon

---

[1] See also *Doscher* v. *United States Pipe Line Co.,* 185 Fed. Rep. 959; *John D. Park & Sons Co.* v. *Bruen,* 133 Fed. Rep. 806; *New Jersey Steel & Iron Co.* v. *Chormann,* 105 Fed. Rep. 532; *Goddard* v. *Mailler,* 80 Fed. Rep. 422; *East Tennessee, V. & G. R. Co.* v. *Atlanta & F. R. Co.,* 49 Fed. Rep. 608.

the identical provision contained in the earlier statute, it would have expressed that intention in unmistakable language.

No reason appears, therefore, for refusing to apply here the rule of *Smith* v. *Lyon, supra.* The objection made below that the plea to the jurisdiction is bad because not limited by its terms to the question of jurisdiction over the particular defendant is highly technical, and was hardly insisted upon here; and the contention that his exemption from suit was waived by the acknowledgment on the summons of service is clearly unfounded. John M. Camp properly asserted his privilege by plea to the jurisdiction, and the plea should have been sustained. It follows that the judgment against him is void; that the judgment of the Circuit Court of Appeals, in so far as it affirms the judgment of the District Court against him, should be reversed; and the suit should be dismissed as to him.

*Second.* The plea to the jurisdiction filed by P. D. and P. R. Camp was properly overruled. The objection was based wholly on the fact that John M. Camp was not suable within the district. This is an exemption from suit personal to the nonresident of the district. A resident co-defendant cannot avail himself of the objection.[1] If John M. had been an indispensable party, the failure to obtain jurisdiction over him would, of course, be fatal to the maintenance of the suit. *Barney* v. *Baltimore City,* 6 Wall. 280. But he was not an indispensable party; and under § 50 of the Judicial Code the trial court might, if it had sustained John M.'s plea to the jurisdiction, have rendered judgment against the other two defend-

---

[1] *Tice* v. *Hurley,* 145 Fed. Rep. 391, 392; *Chesapeake & O. Coal Agency Co.* v. *Fire Creek Coal & Coke Co.,* 119 Fed. Rep. 942; *Smith* v. *Atchison, T. & S. F. R. Co.,* 64 Fed. Rep. 1, 2; *Jewett* v. *Bradford Sav. Bank & Trust Co.,* 45 Fed. Rep. 801; *Bensinger Self-Adding Cash Register Co.* v. *National Cash Register Co.,* 42 Fed. Rep. 81, 82.

ants; for this is an action on a joint contract, and one of the several joint-contractors is not an indispensable party defendant in such a suit. *Clearwater* v. *Meredith*, 21 How. 489.

*Third.* P. D. Camp and P. R. Camp contend that, in view of the error in overruling John M. Camp's plea to the jurisdiction and proceeding to judgment against him, the court may not confine its action to correcting the error by setting aside the judgment and dismissing the suit as to him, but must set aside the judgment as against all the defendants, thus requiring a new trial as against the other two. But this is not a necessary result of erroneously retaining jurisdiction over John M. Camp; for, as above shown, John M. was not an indispensable party to a suit to enforce the liability of the other two joint obligors; and if the trial court had sustained his plea to the jurisdiction, the suit might, under § 50 of the Judicial Code, have proceeded to judgment as against the other defendants. Whether the error committed in retaining jurisdiction over John M. requires a reversal of the judgment as against the other defendants depends upon whether that error may have prejudiced them. The record does not show that the error committed could have prejudiced them in any way; and their counsel admitted at the bar that the error had not prevented them from availing themselves of any defense, and had not influenced the admission or rejection of evidence, or the granting or refusal of any instruction asked or given. Only error which may have resulted in prejudice could justify reversal of a judgment. Compare *Yazoo & Mississippi Valley R. R. Co.* v. *Mullins*, 249 U. S. 531.

It is, however, contended that the Virginia practice would require a reversal of the judgment as against all defendants, and that the Conformity Act (Revised Statutes, § 914) requires that the state practice be followed. If such were the Virginia practice, which is denied, it

would not be binding on this court. The Conformity Act by its express terms refers only to proceedings in District (and formerly Circuit) Courts and has no application to appellate proceedings either in this court or in the Circuit Court of Appeals. Such proceedings are governed entirely by the acts of Congress, the common law, and the ancient English statutes. *United States* v. *King*, 7 How. 833, 844; *Boogher* v. *Insurance Co.*, 103 U. S. 90, 95; *Chateaugay Ore & Iron Co., Petitioner*, 128 U. S. 544; *St. Clair* v. *United States*, 154 U. S. 134, 153; *Francisco* v. *Chicago & A. R. Co.*, 149 Fed. Rep. 354, 358–359; *United States* v. *Illinois Surety Co.*, 226 Fed. Rep. 653, 664. In cases coming from federal courts the Supreme Court is given by statute full power to enter such judgment or order as the nature of the appeal or writ of error (or certiorari, § 240 of the Judicial Code) requires. Revised Statutes, § 701. Circuit Court of Appeals Act of March 3, 1891, c. 517, § 11, 26 Stat. 826, 829. See also § 10 of the same act. Compare *Ballew* v. *United States*, 160 U. S. 187, 198, *et seq.* And by Act of February 26, 1919, c. 48, 40 Stat. 1181, amending § 269 of the Judicial Code, the duty is especially enjoined of giving judgment in appellate proceedings "without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

The error in retaining jurisdiction over John M. Camp, does not, therefore, require that the judgment as against the other two defendants be set aside.

*Fourth.* P. D. and P. R. Camp contend, however, that the judgment against them should be reversed also on the ground that there was error in the instructions as to the measure of damages. The contention must be examined, as the whole case is here on writ of certiorari and the objection was properly saved. *Lutcher & Moore Lumber Co.* v. *Knight*, 217 U. S. 257, 267; *Delk* v. *St. Louis & San Francisco R. R. Co.*, 220 U. S. 580, 588.

Gress was the owner of the entire capital stock of the Morgan Lumber Company, a corporation which held the title to saw-mill properties in Florida. The three defendants Camp were the owners of valuable timber lands near the mill. By contract under seal dated August 18, 1913, the Camps agreed to join with Gress in organizing a corporation under the name of Levy County Lumber Company to which Gress would convey the saw-mill properties which the parties valued at $125,000, and the Camps would convey the timber lands which they valued at $325,000; that Gress should receive, in exchange for the mill properties, five-eighteenths of the stock in the new company and the Camps, in exchange for the lands, thirteen-eighteenths of the stock; and that the parties should in that proportion finance the company. Gress was ready and willing and able to perform his part of the contract; and the Camps broke it by definitely refusing to perform. The only question in the case seriously controverted was the amount of damages recoverable. There was evidence that by reason of the breach of contract which resulted in depriving the mill of its timber supply its value depreciated heavily. The trial judge charged the jury that among the elements of damages recoverable was the amount of the depreciation in the market value of the mill between the date of the contract and the date of the breach. The objection made to this ruling was based wholly on the ground that, as the mill properties were vested in the Morgan Lumber Company, Gress could not recover more than nominal damages, although he owned all of its stock. The contention is that before it could be determined whether plaintiff, as owner of the stock of the Morgan Lumber Company, sustained any damages by reason of the depreciation in value of the mill property, an accounting and settlement of the Morgan Lumber Company's affairs would be necessary; and it is urged that the lower court, in rejecting a ruling to that

effect and in charging as it did, held erroneously that the
person who owns the entire capital stock of a corporation
is in fact and in law identical with the corporation.

The contention appears to rest upon a misapprehension
of the plaintiff's position. The contract recited that Gress
owned the mill, and that the title only was in the Morgan
Lumber Company. If so, the depreciation would clearly
be a loss suffered by Gress, and he could recover as com-
pensation an amount equal to that loss, since he was equi-
table owner with power to require an immediate conveyance
of the legal title. There was also introduced in evidence
a vote of the directors of the Morgan Lumber Company,
which, referring to the contract of August 18, 1913, as
having been made by Gress "representing the Morgan
Lumber Company," approved the same "in its entirety."
There was not a particle of evidence that any other per-
son had any interest of any kind in the corporation or its
assets. Consequently, whether Gress entered into the
contract technically on his own behalf or technically as
agent for the corporation, his undisclosed principal, is
immaterial. In either case the suit is one brought by him
individually; in either case all the loss suffered through
defendants' breach of contract is recoverable by Gress;
in either case the measure of damage is the same.[1] There
is no basis for the contention that an accounting and
settlement of the Morgan Lumber Company's affairs was
necessary in order to determine the amount of plaintiff's
loss; and the failure to require such an accounting does
not involve any disregard of the corporate entity.

The decision of the Circuit Court of Appeals denying
the contention that the plaintiff was entitled to recover
only thirteen-eighteenths of the loss due to the depre-

[1] *United States Telegraph Co.* v. *Gildersleve*, 29 Maryland, 232, 246;
*Leterman* v. *Charlottesville Lumber Co.*, 110 Virginia, 769, 772; *Groover,
Stubbs & Co.* v. *Warfield & Wayne*, 50 Georgia, 644, 654; *Joseph* v.
*Knox*, 3 Campb. 320.

ciation in the mill properties was clearly correct.  If the jury, believed as contended that defendants' breach of contract, by depriving those properties of a timber supply, .reduced their value, the plaintiff's loss in that respect was the whole of the reduced value.  On the other hand, if the market value of the timber lands increased, the plaintiff's loss from being deprived of the gain from this source was, as the court ruled, only five-eighteenths of that gain. There was no other objection taken which requires us to consider whether the rulings as to damages were in other respects proper.

The judgment as to P. D. Camp and P. R. Camp is affirmed and as to John M. Camp is reversed and the case as so modified is remanded to the District Court of the United States for the Eastern District of Virginia with directions to dismiss the suit as to John M. Camp.

*Modified and affirmed.*