**CONNECTICUT FIRE INS. CO. v. LAKE TRANSFER CORPORATION et al.**
**No. 73.**

Circuit Court of Appeals, Second Circuit.
Dec. 17, 1934.

Burke & Desmond, of Buffalo, N. Y., and Robert M. McCormick, of New York City (Charles S. Desmond, of Buffalo, N. Y., of counsel), for appellant Lake Transfer Corporation.

Slee, O'Brian, Hellings & Ulsh, of Buffalo, N. Y. (Dana B. Hellings, of Buffalo, N. Y., of counsel), for appellant Hanna Furnace Corporation.

Purdy & Purdy, of New York City (Edmund F. Lamb and John E. Purdy, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This litigation arises out of the refusal by the purchaser of a shipment of sulphur to accept delivery of the final barge load because two prior barge loads had been contaminated with iron ore. The seller employed Seaboard Great Lakes Corporation to transport the sulphur from New York City to Middleport, on the New York State Barge Canal. It was laden on seven barges, four of which carried their loads directly to Middleport, where they were delivered to the purchaser in sound condition. The other three barges, because when light they would have been unable to clear the canal bridges, proceeded to Buffalo in order to have their cargoes transferred to other barges for delivery at Middleport. Seaboard Great Lakes Corporation employed Lake Transfer Corporation to shift the cargoes at Buffalo, and it in turn engaged the Hanna Furnace Corporation to do the actual work. The cargoes of two of the three barges were transferred by the Furnace Corporation at its ore dock into other barges and delivered at Middleport. These two barge loads were found to be contaminated with iron ore, which resulted in the starting of serious fires when the sulphur was put through the unloading equipment and conveyor system of the purchaser. Consequently the purchaser notified the seller that it would reject the final barge load which was then in process of transfer to the barge Pelham at the Furnace Corporation's ore dock. The seller resold the rejected sulphur at a loss, which was paid by the carrier. The carrier was reimbursed by its insurer, Connecticut Fire Insurance Company, a Connecticut corporation, and the latter, as surrogate of its insured's claim, filed the present libel in personam against Lake Transfer Corporation for breach of a maritime contract. Lake Transfer Corporation impleaded the Hanna Furnace Corporation. Both respondents were held liable to the libelant by the interlocutory decree. See (D. C.) 60 F.(2d) 172. The damages having been determined by a commissioner and exceptions to his report having been overruled, the final decree was entered, from which the respondents have appealed.

Upon the appeal of the Furnace Corporation, the only question which need be considered is whether the court acquired jurisdiction over it. By special appearance, exceptions, and exceptive allegations, it raised this issue when first brought into the suit and saved it in its answer when its exceptions were overruled. Both Lake Transfer Corporation and the Furnace Corporation are New York corporations, each having its principal office in the Western district and doing no business and having no agent within the Eastern district. Service upon Lake Transfer Corporation was obtained by attachment of a debt owing to it by a debtor resident in the Eastern district. When the Furnace Corporation was impleaded under Admiralty Rule 56 (28 USCA § 723), a citation was served upon it in the Western district. Authority for service of process outside the territorial limits of the district of the court must be found in some statute. Section 52 of the Judicial Code (28 USCA § 113) is relied upon. But it will not serve. Section 52 is an exception to the general prohibition of section 51 (28 USCA § 112) against suing a defendant in a district other than that in which he or the plaintiff resides, as Mr. Justice Brandeis pointed out in Camp v. Gress, 250 U. S. 308, 315, 39 S. Ct. 478, 63 L. Ed. 997. It is perfectly well settled that section 51 does not apply to proceedings in the admiralty. Atkins v. Fiber Disintegrating Co., 18 Wall. 272, 21 L. Ed. 841; In re Louisville Underwriters, 134 U. S. 488, 10 S. Ct. 587, 33 L. Ed. 991. Indeed, because it does not is the only reason the libelant can proceed against Lake Transfer Corporation by foreign attachment. Compare Big Vein Coal Co. v. Read, 229 U. S. 31, 33 S. Ct. 694, 57 L. Ed. 1053; Ex parte Des Moines & M. Railway Co., 103 U. S. 794, 26 L. Ed. 461. If the general section does not apply to the admiralty, there is good ground for arguing that the section declaring an exception does not. But we need not now determine whether section 52 may be construed of broader application than section 51 and may include causes in the admiralty, as was assumed in Downs v. Wall,

176 F. 657 (C. C. A. 5). Even if the section be applicable, the libelant is not aided. It provides that, if there are two or more defendants, residing in different districts of the state, suit may be brought in either district and a duplicate writ may be issued against the defendants directed to the marshal of any other district in which any defendant resides. In the case at bar the respondent and the impleaded respondent did not reside in different districts; both resided in the Western district. The express condition under which a duplicate writ might be directed to the marshal of a district other than that of the forum was not met. The libelant's argument that in a suit in the admiralty a defendant must be deemed a resident pro hac vice of the district in which his property is seized by attachment has no sound foundation; it is based on pure fiction. Although it finds some support in two district court cases [The Resolute, 14 F.(2d) 232 (D. C. E. D. N. Y.); The Troy Socony, 18 F.(2d) 629 (D. C. E. D. N. Y.)], the opinions advance no arguments to support the fiction, and we refuse to accept it. To do so would be in effect a judicial repeal of the residence requirements of section 52, in so far as it may relate to causes in the admiralty. The Hanna Furnace Corporation was never legally served. Its appeal must be sustained, and the libel and impleading petition be dismissed as against it.

The appellant Lake Transfer Corporation contends that the decree was erroneous in not providing a recovery over in its favor against the Furnace Corporation, since the sole ground of liability was the latter's negligence in allowing the two prior barge loads of sulphur to become contaminated during the process of transfer at its ore dock. Whether Lake Transfer Corporation should have been held only secondarily liable has become a moot issue by reason of our decision that the Furnace Corporation must be dismissed from the suit.

But it still remains material to determine whether the Furnace Corporation was negligent, since only if it were can Lake Transfer Corporation, which stands in its shoes, be held liable. It is conceded that the contamination of the two prior barge loads occurred at the Hanna dock while the cargoes were being shifted, but it is urged that there is no proof that this was due to negligence in handling them. The shifting was done by the use of clam scoops which had previously been used in lifting ore. Their internal structure was such that pieces of ore could readily have become lodged on their girders and flanges. No proof was offered that the scoops had been washed or cleaned before using them to lift the sulphur. The inflammability of sulphur and the consequent danger of leaving embedded in it any loose iron which might produce a spark and start a fire were well known. Under these circumstances a prima facie showing was made that the ore got in through negligence and the respondents were called upon to explain its presence or at least what pains were taken to keep it out. See Bartley Scow Corp. v. J. V. Petrie & Son, 37 F.(2d) 58 (C. C. A. 2); Reid v. Fargo, 213 F. 771, 773 (C. C. A. 2), reversed, 241 U. S. 544, 36 S. Ct. 712, 60 L. Ed. 1156. The evidence of negligence was sufficient.

The final question involves the proof of damages. The rejected sulphur was resold for $19 per ton, which was $4.60 per ton less than the contract price to the original consignee, and damages were awarded the libelant on the basis of a loss of $4.60 per ton. The appellant objects to establishing the loss by this resale price because the resale was made to a customer of the consignor at Natrona, Pa., instead of by a resale in the Buffalo market, where the market price of sound sulphur was stipulated to be the same as the contract price of $23.60 per ton. We agree that to use this resale the libelant was obliged to show that the Buffalo market was not available to it. Grand Tower Min., Mfg. & Transp. Co. v. Phillips, 23 Wall. 471, 23 L. Ed. 71; Tibbitts-Hewitt Grocery Co. v. S. E. Lux, Jr., Mercantile Co., 5 F.(2d) 549 (C. C. A. 8); Yellow Poplar Lumber Co. v. Chapman, 74 F. 444 (C. C. A. 4). We think it did so. There were two large customers located at Buffalo and a third at Rochester, N. Y., and no bid was solicited from them. This was because they were customers of the Texas Gulf Sulphur Company and were under contract to buy all their requirements from that company. It is urged by the appellant that such contracts were illegal and void under the anti-trust laws, but the question of their illegality is quite immaterial to the present issue. However invalid the contracts may have been, there was no available market at Buffalo so long as the Texas Company's customers continued in practice to abide by them. There was some testimony that perhaps permission could have been obtained from the Texas Company to allow one of its customers to purchase the sulphur. Witness Richards said he thought it could, though he knew of no similar instances. Witness Robinson, however, testi-

fied that, although the producers were amiable about such matters in earlier years, at the time in question they had abandoned the practice and refused to give leave to buy outside. On the whole Robinson was in a somewhat better position to know the policy of the two producers than was Richards and we are content to accept his version. Hence the consignor acted reasonably in seeking bids from its own customers in adjacent territory without first offering the rejected sulphur to consumers in Buffalo. The only bid it obtained was the one accepted. According to the testimony of Mr. Robinson, who had had experience in disposing of distressed sulphur, the price obtained under the circumstances was an excellent one.

The decree is affirmed as to the appellant Lake Transfer Corporation; as to the Hanna Furnace Corporation it is reversed, and the suit dismissed.