PICKING et al. v. PENNSYLVANIA R. CO. et al.

Civil Action No. 1227.

District Court, M. D. Pennsylvania.

April 25, 1944.

Ida M. Picking, of Baltimore, Md., for plaintiffs Ida M. Picking and Guy W. Picking.

Spencer G. Nauman, of Harrisburg, Pa., for defendant Pennsylvania R. Co.

J. McD. Sharpe, Edmund C. Wingerd, and Daniel W. Long, all of Chambersburg, Pa., for defendants Watson R. Davidson, W. R. Kieffer, J. Glen Benedict, J. L. Kell, Mrs. J. L. Kell, H. S. Byers, Paul H. Winger, and C. B. Rotz.

James A. Strite, of Chambersburg, Pa., for defendant Roy G. Kell.

William M. Rutter, Deputy Atty. Gen., for defendants Arthur H. James, J. L.

Pouchyba, Samuel D. Mackey, and G. J. Sweeney.

JOHNSON, District Judge.

This is a civil action commenced in the Middle District of Pennsylvania by residents of the State of Maryland against the above named defendants, some of whom are residents of the Commonwealth of Pennsylvania, and the rest of whom are residents of the State of New York.

The plaintiffs are represented by Mrs. Ida M. Picking, who is one of the plaintiffs above named.

The complaint itself, comprising one hundred fifty-four (154) separate paragraphs, is complex, prolix, contradictory, and replete with conclusions inextricably entangled with allegations of fact. In every respect it violates the rules for simplified pleading, set forth in the Rules of Civil Procedure for the District Courts of the United States.

The complaint, alleging conspiracy, does not set forth the facts relied upon by plaintiffs in the order of their occurrence but first set forth plaintiff's allegations against the Pennsylvania Railroad Company. The method adopted by plaintiffs in the preparation of the complaint adds to the difficulty of separating the facts and presenting them in proper order. The ability of the defendant railroad company to respond in damage may have been responsible for this singular method of drawing the complaint.

The facts, briefly stated, are as follows: The plaintiffs, at that time residents of the State of Florida, were arrested in the City of New York on November 1, 1940. As set forth in paragraph 115 of the complaint, the arrest was made for violation of a parking regulation. As well as can be ascertained from the complaint, the plaintiffs, while held on the above charge, or soon thereafter, were again arrested for a violation of a Statute of the State of New York and charged with desecration of the American flag. Plaintiffs allege that (par. 118) "thereafter plaintiffs were charged with a crime by acts described under affidavit before Magistrate Aurelio, and ordered to be signed by George Bryant as a substituted complaint." The charge at that time, according to paragraph 119 of the complaint, is alleged in the following words: "The substance of s id acts were that plaintiffs had 'displayed a flag picture, *with* an advertisement, on their car.'" Plaintiffs allege that on February 5, 1941, a substitution of record in the magistrate's court was made and in paragraph 132 of the complaint set forth that: "The substituted pleading alleged that plaintiffs had placed an advertisement *upon* the flag, but was unsupported by oath." Plaintiffs' claim is that some time later "one of the justices of the inferior city court was induced to exceed his authority" and issue a bench warrant "upon said falsified and substituted pleading" and that this act constitutes a part of the conspiracy.

A bench warrant issued, and thereafter the plaintiffs being found in Chambersburg, Pennsylvania, were removed to New York by authority of an extradition warrant. Plaintiffs claim that the extradition proceedings were illegal and that the defendants Thomas E. Dewey, Arthur H. James, and Herbert H. Lehman, individually, conspired to injure them thereby. Plaintiffs further allege that at the time of the execution of the extradition warrant at Chambersburg, Pennsylvania, they were forcibly and unlawfully seized and assaulted "and with undue force and violence, pushed, pulled, pinched and dragged about the highway in the presence of about 300 people who had gathered for a parade." For these alleged acts the defendants, Sweeney, Mackey and Rotz of Chambersburg, Pennsylvania, are alleged to be liable. The preceding paragraph (53) indicates that some degree of force was necessary to enforce the warrant as "Plaintiffs thereupon determined that they would neither be deprived of their liberty by persons purporting to act for the Commonwealth of Pennsylvania but who were actually acting in direct violation of their duty." Paragraph 110 also illuminates the occurrences during this time as: "Plaintiffs, in the preservation of their civil rights, rightfully resisted said unlawful seizure and imprisonment and were greviously (sic) injured." Plaintiffs further allege that at this time they suffered physical injuries and mental suffering as well as damage to their apparel.

The further allegations are made that the defendant Kiefer, a justice of the peace, denied plaintiffs a judicial hearing; that they were imprisoned in the county jail of Franklin County, Pennsylvania, at Chambersburg by the defendants Roy G. Kell, J.

L. Kell, and Mrs. J. L. Kell "without lawful commitments for reasons aforesaid." The "reasons aforesaid" appear, upon an examination of the complaint, to be a determination upon the part of these defendants to "unlawfully seize plaintiffs in the presence of about 300 people who had gathered for a parade." (Par. 52) In paragraph 58 it is alleged that: "Said defendants who actually and physically participated in the unlawful seizures, injuries, and unlawful imprisonment of plaintiffs without commitments, on said date, were as follows: Louis Costuma, H. S. Beyers, G. J. Sweeney, Samuel D. Mackey, C. B. Rotz, W. R. Kiefer, Roy G. Kell, J. L. Kell, and Mrs. J. L. Kell." Plaintiffs allege (par. 25) that while they were held in the Franklin County jail the defendants, J. L. Kell and Mrs. J. L. Kell, "took plaintiffs' petition for a Writ of Habeas Corpus from plaintiff, Ida Picking, on the pretense of unlawfully censoring it." Paragraph 26 contains the assertion that the defendant, Roy G. Kell "took said petition from his brother, J. L., and ran out of the door of the jail with it over the protest of plaintiffs." It is to be inferred that the petition was never returned to plaintiffs.

It is necessary to go back to paragraph 13 of the complaint to secure the next allegation which is that the defendant, Mary Graham, stole $10 from the person of the plaintiff, Ida M. Picking, while she was detained in the women's room of the Pennsylvania Railroad Company's station awaiting arrival of the train for New York.

The allegations against the Pennsylvania Railroad Company are contained in paragraphs 5 to 12 of the complaint and claim that although plaintiffs notified the agent of the railroad company, who "wore the usual uniform of the said corporation and was acting in the course of his duties" of plaintiff's claim that they were being unlawfully transported, their protests and notice were disregarded by the agent. The agent, to whom plaintiffs pointed out alleged errors in the extradition warrant, is not further identified. It is alleged by plaintiffs that the defendant railroad company is therefore liable to plaintiffs for damages sustained by them, not only for "unlawfully and forcibly transporting plaintiffs," but also jointly and severally for all other damages sustained by plaintiffs during the course of events above outlined, as (par 37) the defendant railroad company by transporting plaintiffs, "adopted said acts as their own". Any use of force by the agent of the railroad company in transporting plaintiffs is not alleged in the complaint and plaintiffs were at that time in the custody of defendant E. D. Fitzpatrick, of the New York police, who was designated as one of the persons authorized to take plaintiffs into custody.

Paragraphs 146 to 154 inclusive, contain further allegations of damages by reason of which plaintiffs claim from the defendants the sum of $1,120.050.

The time for filing answers to the complaint was extended and all the Pennsylvania defendants filed motions to dismiss the complaint. In this respect plaintiffs. again, disregarding the position of the other defendants, with extraordinary pertinacity, attack the defendant railroad company alone by filing on October 6, 1943, a "Motion to enter 'judgment by default with amount of damages to be determined by the jury', for plaintiffs against defendant, Pennsylvania Railroad Company, for failure to appear and defend within 20 days after process was served upon them." This motion comprises 106 separate paragraphs and contains, by means of alternate allegations, answers to defendant railroad company's motion to dismiss the complaint as well as other motions which are scattered through the pleading. Such pleadings as the complaint and the above motion are so prolix and complex as to constitute an unjustifiable and unwarranted burden upon the Court as well as upon any defendant who might be called upon to draw an answer thereto. The conclusion is inescapable that the plaintiffs have designedly, by such means, made it as difficult as they could conceive for the defendant railroad company to answer their pleadings. The principal allegation in this lengthy motion to the effect that the defendant railroad company failed to appear and defend within 20 days is not supported by the record. The complaint was served upon that defendant on August 7, 1943; on August 14, 1943, the time to answer was extended to September 30, 1943, and on September 28, 1943 that defendant's motion to dismiss the complaint was filed of record.

No useful purpose can be served by considering, in this opinion, all the matters raised by all the parties to this action. Only those matters which are determined

by this Court to be controlling will therefore be discussed. Those matters are as follows:

The plaintiffs allege in their complaint that the jurisdiction of this Court arises, under three Articles and one Amendment of the Constitution of the United States, and also under five statutes of the United States. These have all been examined and considered and found not to apply to the facts alleged. The jurisdiction of this Court must therefore arise solely by reason of diversity of citizenship.

■ Under Sec. 51 of the Judicial Code (Act of 1887-1888, Sec. 1, 28 U.S.C.A. § 112), when an action for damages is brought against several defendants in the district where some of them reside and the jurisdiction of the District Court is founded solely upon diversity of citizenship, a co-defendant cannot be compelled to submit to the jurisdiction by service in that district if he is a citizen and resident of another state. Camp v. Gress, 250 U.S. 308, 39 S.Ct. 478, 63 L.Ed. 997. The New York State defendants have not submitted to the jurisdiction of this Court and this Court cannot compel them so to do. This action against them must accordingly be dismissed.

■ The defendant railroad company, however, is not in a position to request dismissal of this action because the New York State defendants cannot be compelled to submit to the jurisdiction of this Court. The New York State defendants are non-resident and their exemption from suit Sec. 51 (Supra) is a personal privilege of which the defendant railroad company cannot avail itself. Camp v. Gress, 250 U.S. 308, 39 S.Ct. 478, 63 L.Ed. 997, supra; Wyoga Gas & Oil Corporation v. Schrack et al., D.C., 27 F.Supp. 35.

■ There are other grounds, however, upon which the defendant railroad company is entitled to a dismissal. The plaintiffs have complained that they notified some unidentified but uniformed agent of the railroad company of the fact that they were being transported to New York under an extradition warrant which contained errors and that those errors were pointed out to that person who disregarded the protest of the plaintiffs. It is upon this ground that plaintiffs seek to make the railroad company respond in damages. No cause of action is shown in the complaint against this defendant. It is inconceivable,

even if the allegations of plaintiffs be taken to be true, that any uniformed employee of a railroad company would be authorized by his corporate employer to undertake to pass upon the form and legality of an extradition warrant. There is no allegation of assault or undue violence upon the part of any employee of this defendant nor any allegation of improper confinement thereby. Failure, however, upon the part of this defendant to comply with the order for transportation might have resulted in penalties which need not be considered here. For these reasons the action is dismissed as to the defendant railroad company.

■ As to the allegations against Arthur H. James, it is to be noted that he is named in the complaint as an individual and it is plaintiff's claim that it was in such capacity that he took part in the alleged conspiracy. The facts alleged by the plaintiffs are insufficient to hold Arthur H. James as a party defendant herein. This Court takes judicial notice of the fact that at the time the extradition warrant was acted upon by Arthur H. James, he was the Governor of the Commonwealth of Pennsylvania. In such a matter he acted in his official capacity, and then only after receiving the customary certification from the office of the Attorney General of the Commonwealth of Pennsylvania, as to the correctness of the requisition for arrest. The complaint will be dismissed as against Arthur H. James.

The rest of the defendants are citizens of the Commonwealth of Pennsylvania. The defendants Sweeney, Mackey, and Rotz were the arresting officers. The defendants J. L. Kell and Mrs. J. L. Kell are alleged to have taken a petition for a Writ of Habeas Corpus from the plaintiff, Ida Picking, "on the pretense of unlawfully censoring it." The defendant Roy G. Kell is alleged to have taken the petition from his brother, J. L. Kell, and to have given it to the defendants J. Glen Benedict and Watson H. Davidson "who refused to return it to plaintiffs". The defendant W. R. Kieffer is identified as a justice of the peace who is alleged to have denied the plaintiffs a "judicial hearing". The defendants, H. S. Beyers and Paul H. Winger, are not identified. In one part of the complaint it is alleged that they participated in "unlawful acts performed upon the plaintiffs" and in another part of the complaint the defendants "who actually and physically participated in the

unlawful seizures" are named, and the name of Paul H. Winger does not appear.

It thus appears from the complaint, when facts, and not conclusions are alleged, that some of these remaining defendants were officers of the law who are entitled to the presumption that they were engaged in the performance of a duty and that the others engaged in a series of independent and unrelated acts. Nowhere is it alleged that a planned and concerted course of conduct was entered upon by these defendants. In fact, it cannot be ascertained from the complaint but that all of these defendants were officers of the law, jailors, a matron, a justice of the peace, and constables engaged in the performance of a duty. If the defendants who are alleged to have taken a petition for a Writ of Habeas Corpus from the plaintiff, Ida Picking, and to have stolen money from her have committed an actionable wrong, the plaintiffs have a separate remedy therefor. The complaint is dismissed as to these defendants also.

Sufficient basis also exists for a dismissal of this complaint for violation of Rule 8 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c which states that a pleading must be simple, concise, and direct. The pleadings filed by plaintiffs are at variance with the rule to such an extent that the complaint is dismissed upon that ground.

The motions to dismiss the complaint filed by the various defendants are sustained; the various motions filed by the plaintiffs are denied and the complaint is hereby dismissed.