495 F.2d 1183
 AMERICAN CYANAMID COMPANY, a corporation of the State of Maine,
v.
HAMMOND LEAD PRODUCTS, INC. a corporation of the State of
Indiana, and Gary R. Mitchener, Appellants.
 No. 73-1506.
 United States Court of Appeals, Third Circuit.
 Argued Nov. 26, 1973.
Decided April 15, 1974.
 
 Donald Horowitz, Cummins, Cummins, Dunn, Horowitz & Pashman, Hackensack, N.J., for appellant Hammond Lead Products, Inc.
 David R. Simon, Simon & Allen, Newark, N.J., for appellant Gary R. Mitchener.
 Stephen M. Greenberg, Robinson, Wayne & Greenberg, Newark, N.J., for appellee.
 Before KALODNER, ADAMS and ROSENN, Circuit Judges.
 OPINION OF THE COURT KALODNER, Circuit Judge.
 
 
 1
 Can a Maine corporation, with principal headquarters in New Jersey, bring a diversity action in New Jersey against an Indiana corporation and an Indiana resident?
 
 
 2
 The district court answered the question in the affirmative in its Order denying the defendants' motions to dismiss for lack of venue under 28 U.S.C.A. 1391(a) and certifying the issue to this Court pursuant to 28 U.S.C.A. 1292(b).
 
 
 3
 American Cyanamid Company (Cyanamid), a Maine corporation whose principal headquarters are located in New Jersey, a state in which it does business,[1] brought this diversity action in the District of New Jersey against Hammond Lead Products, Inc. (Hammond), an Indiana corporation, and Gary Mitchener, an Indiana resident, charging unfair competition and seeking injunctive and compensatory relief.
 
 
 4
 Cyanamid's complaint alleged, in relevant part, that Mitchener, a former employee of Cyanamid and the MacGregor Lead Company of Chicago, Illinois, a company acquired by Cyanamid, violated his 'contractual and fiduciary duty' to Cyanamid when he left Cyanamid's employ in July of 1971 and became employed with defendant Hammond's Halstab Division in Indiana, and that Mitchener and Hammond engaged in acts of unfair competition, in that the defendants 'lured away' certain of Cyanamid's employees and 'conspired . . . to unlawfully compete with plaintiff and to unlawfully use plaintiff's secret, unique, confidential and valuable methods, techniques, products, customer specifications, data, processes and systems.'
 
 
 5
 The defendants moved to dismiss Cyanamid's complaint, inter alia, for lack of proper venue under 28 U.S.C.A. 1391(a). The district court denied the motions upon oral argument, and entered an Order on May 14, 1973, denying the 'Defendants' motion to dismiss the within action for lack of venue under Section 1391(a) of Title 28 U.S.C.' and certifying 'pursuant to section 1292(b) . . . that this matter involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.' Accordingly, the defendants filed a petition for leave to appeal, which petition was granted by this Court on June 5, 1973.
 
 
 6
 Concisely stated, the issue here is whether the plaintiff corporation Cyanamid is entitled to the privilege of laying venue in the District of New Jersey solely because it does business in that state. The relevant venue statutes in this diversity suit are 28 U.S.C.A. 1391(a) and 1391(c). Section 1391(a) provides:
 
 
 7
 'A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.'
 
 Section 1391(c) provides:
 
 8
 'A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.'
 
 
 9
 It is readily apparent, and not disputed, that two of the three venue options available to a plaintiff under 1391(a) are clearly inapposite under the facts as stated, for New Jersey is neither the judicial district in which 'all defendants reside' nor is it the judicial district 'in which the claim arose.' And, but for the presence of 1391(c), it could likewise not be argued that the third venue option of 1391(a), plaintiff's residence, applies here, since Cyanamid is a Maine corporation and, it has long been settled that 'the 'residence' of a corporation, within the meaning of the venue statutes, is only in the 'State and district in which it has been incorporated." Suttle v. Reich Bros. Construction Co., 333 U.S. 163, 166, 68 S.Ct. 587, 589, 92 L.Ed. 614 (1948), quoting from Shaw v. Quincy Mining Co., 145 U.S. 444, 449, 12 S.Ct. 935, 36 L.Ed. 768 (1892). Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939), represented the only judicial exception to this proposition, in that Neirbo held that a corporation had 'waived' its right to be sued only in its state of incorporation when the corporation obtained a license to do business and appointed an agent for the service of process in another state. This exception, however, as the Supreme Court was careful to point out in the Suttle case, supra, 333 U.S. at pages 167-168, 68 S.Ct. 587, did not imply that the 'residence' of a corporation for venue purposes had been redefined.[2]
 
 
 10
 With the passage of 1391(c), as part of the general revision of the Judicial Code in 1948, Congress expanded the venue options available to a plaintiff in suits against a defendant corporation, clearly going beyond the Neirbo exception, by providing that '(a) corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business.' It is Cyanamid's contention that the second clause of 1391(c), 'and such judicial district shall be regarded as the residence of such corporation for venue purposes,' evidences an intention on Congress' part to completely overrule the long-standing rule of the Suttle case and its predecessors, thereby extending the expanded venue options of the first clause of 1391(c) to plaintiff corporations. We disagree, and cast our vote with the other circuit courts which have rejected the same contention. See Manchester Modes, Inc. v. Schuman, 426 F.2d 629 (2d Cir. 1970); Carter-Beveridge Drilling Co. v. Hughes, 323 F.2d 417 (5th Cir. 1962) (per curiam); Robert E. Lee Co. v. Veatch, 301 F.2d 434 (4th Cir. 1961), cert. denied, 371 U.S. 813, 83 S.Ct. 23, 9 L.Ed.2d 55 (1962).[3]
 
 
 11
 Although we recognize that there is a division of opinion among the district courts[4] and the text writers[5] as to the proper interpretation of 1391(c)'s somewhat nebulous language, in particular its latter clause, we remain unpersuaded that Congress, and the eminent and thorough staff of lawyers assembled to aid in the Judicial Code revision, would have made the change in the Suttle rule urged by Cyanamid via such imprecise language and without a clear indication to that effect in the legislative history.
 
 
 12
 We fail to see how the language 'such corporation' as used in the second clause of 1391(c) can refer to anything other than the antecedent phrase '(a) corporation may be sued,' when this language is regarded in its normal syntactical usage.
 
 
 13
 The late Chief Judge Sobeloff in his analysis in Robert E. Lee & Co. v. Veatch, supra, effectively disposed of Cyanamid's syntactical contention as follows:
 
 
 14
 'It seems to us more probable that the term 'such corporation' was meant to limit the applicability of the subsection to defendant corporations, for the corporations referred to in the opening words of the section are those that are sued, not those that sue. This would certainly be the more natural usage of the 'such.' If the purpose of the subsection was to define the residence of all corporations, plaintiffs as well as defendants, the expected mode of expression would be 'a corporation may sue or be sued.' Moreover, had Congress designed to give the subsection the sweeping effect urged by the plaintiffs, a term like 'all corporations' would have been used in the second clause, instead of the restrictive term 'such corporation.' In summary, we think it would be inappropriate to read something into the statute which could have been so easily expressed, had this been within the congressional aim.' 301 F.2d at 438.
 
 
 15
 There is absolutely no support in the legislative history for Cyanamid's interpretation of 1391(c).[6] Furthermore, the writings of several of the principal figures involved in the revision of the Judicial Code, some of which purport to identify the important changes adopted, fail to reveal any intent to change the Suttle rule.[7] Finally, since the legislators and drafters of the Judicial Code emphasized that the Reviser's Notes explained all changes in the law,[8] it is of some import that only one obscure comment,[9] affording no sustenance to Cyanamid's contentions, relates to 1391(c). Under these circumstances, we must be guided by the rule of statutory construction as stated by the Supreme Court in Anderson v. Pacific Coast Steamship Co., 225 U.S. 187, 199, 32 S.Ct. 626, 630, 56 L.Ed. 1047 (1912), and later reaffirmed in Fourco Glass Co. v. Transmirra Corp., 353 U.S. 222, 227, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957), in a discussion of another venue provision involved in the 1948 Judicial Code revision: 'It will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect, unless such intention is clearly expressed.'
 
 
 16
 Cyanamid nonetheless argues that despite the awkward language and the legislative silence, its interpretation of 1391(c) should still prevail, for otherwise the section's second clause would be redundant. This is not necessarily true, as was noted by Judges Sobeloff and Friendly, respectively, in the Robert E. Lee & Co., supra, and Manchester Modes, supra, cases.
 
 
 17
 The latter clause of 1391(c) can readily be regarded as a provision intended to be used in connection with other 'special' venue statutes, for purposes of defining the 'residence' of a defendant corporation. Such was the application of the clause in Pure Oil Co. v. Suarez, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966).
 
 
 18
 Alternatively, although with perhaps less facility, the second clause could have been aimed at the problem posed by the facts of the Suttle case. There, a Mississippi resident brought suit in the Eastern District of Louisiana against a partnership whose members resided in the Western District, and a Texas corporation which had qualified to do business in Louisiana. Then, as now under 28 U.S.C.A. 1392(a), the applicable venue rule was that in a suit against two or more 'defendants residing in different districts in the same State,' venue was proper in either district. Although the Eastern District would have been a proper venue district under the Neirbo rule in a suit against the Texas Corporation alone, the Supreme Court nevertheless held that venue was improperly laid under these facts. The Court emphasized, as noted earlier, that Neirbo had not changed the Suttle definition of corporate residence. Therefore, since the Texas corporation technically 'resided' only in Texas, the predecessor to 1392(a) could not be employed to make the Western District partnership suable in the Eastern District of Louisiana.
 
 
 19
 Accordingly, we hold that 1391(c) applies only to defendant corporations.[10]
 
 
 20
 The Order of the district court will be reversed, and the case remanded with directions to dismiss the complaint.
 
 
 
 [1]
 Appellants do not contest this point. Appellant's Brief at 3
 
 
 [2]
 For a brief discussion of the pre-1948 history of corporate venue, see 1 Moore, Federal Practice, P0.142 (5.-3), at 1489-92 (2d rev. ed. 1974)
 
 
 [3]
 The Supreme Court has not ruled on this question. See Abbott Laboratories, Inc. v. Gardner, 387 U.S. 136, 156-157 n.20, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)
 
 
 [4]
 It is noteworthy that a substantial number of the district court opinions holding that 1391(c) encompasses both plaintiff and defendant corporations have since been undermined precedentially by the subsequent decisions in the Second, Fourth and Fifth Circuit Courts of Appeals just cited in the text. E.g., Toilet Goods Association, Inc. v. Celebrezze, 235 F.Supp. 648 (S.D.N.Y.1964); Wear-Ever Aluminum, Inc. v. Sipos, 184 F.Supp. 364 (S.D.N.Y.1960); Travelers Ins. Co. v. Williams, 164 F.Supp. 566 (W.D.N.C.1958); Standard Ins. Co. v. Isbell, 143 F.Supp. 910 (E.D.Tex.1956); Southern Paperboard Corp. v. United States, 127 F.Supp. 649 (S.D.N.Y.1955); Freiday v. Cowdin, 83 F.Supp. 516 (S.D.N.Y.1949)
 
 
 [5]
 Those taking the position that 1391(c) covers both plaintiff and defendant corporations include: 1 Barron & Holtzoff, Federal Practice and Procedure, 80, at 388 (Rev. 1960); Wright, Federal Courts, 42, at 155-56 (2d ed. 1970); Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 L. & Contemp.Prob. 216 (1948); Note, the Proposed Revision of the Federal Judicial Code, 60 Harv.L.Rev. 424 (1947); Note, Federal Venue and the Corporate Plaintiff, 37 Ind.L.J. 363 (1962); Note, Federal Venue and the Corporate Plaintiff: Judicial Code Section 1391(c), 28 Ind.L.J. 256 (1953); Comment, 76 Harv.L.Rev. 641 (1963)
 Those adhering to the view that 1391(c) is limited to defendant corporations include: 1 Moore, Federal Practice, P0.142(5.-3), at 1503 (2d rev. ed. 1974); Comment, The Corporate Plaintiff and Venue Under Section 1391(c) of the Judicial Code, 28 U.Chi.L.Rev. 112 (1960); Comment, 48 Va.L.Rev. 968 (1962).
 
 
 [6]
 See Hearings on H.R.1600 & 2055 Before Subcomm. No. 1 of the House Comm. on the Judiciary, 80th Cong., 1st Sess. (1947); H.R.Rep.No.308, 80th Cong., 1st Sess. (1947); S.Rep.No.1559, 80th Cong., 2d Sess. (1948)
 
 
 [7]
 Barron, The Judicial Code: 1948 Revision, 8 F.R.D. 439 (1948); Galston, An Introduction to the New Federal Judicial Code, id. at 201; Holtzoff, The New Federal Judicial Code, id. at 343; Maris, New Federal Judicial Code: Enactment by 80th Congress a Notable Gain, 34 A.B.A.J. 863 (1948). Although all but Galston's article refer to changes in the venue laws, no comment is made about the Suttle rule
 
 
 [8]
 See H.Rep.No.380, supra note 6, at 7; S.Rep.No.1559, supra note 6, at 2; Hearings on H.R.1600 & 2055, supra note 6, at 40; Barron, supra note 7, at 441. Mr. Barron was the Chief Reviser
 
 
 [9]
 The note reads:
 'In subsection (c), references to defendants 'found' within a district or voluntarily appearing were omitted. The use of the word 'found' made said section 111 ambiguous. The argument that an action could be brought in the district where one defendant resided and a nonresident defendant was 'found,' was rejected in Camp v. Gress, 1919, 39 S.Ct. 478, 250 U.S. 308, 63 L.Ed. 997. However, this ambiguity will be obviated in the future by the omission of such reference.'
 
 
 [10]
 In light of our view of the language of 1391(c), we find no merit in Cyanamid's remaining policy arguments
 Additionally, we reject Cyanamid's argument that either Pure Oil Co. v. Suarez, supra, or Denver R.R. Co. v. Railroad Trainmen, 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967), indicate an interpretation of 1391(e) contrary to ours. Both of these cases dealt only with defendants, and indeed the very language Cyanamid quotes from Justice Harlan's opinion in the Pure Oil case tends to support the theory that 1391(c) was directed at the problem of corporations as defendants, with no thought given to corporations as plaintiffs:
 'The effect of 1391(c) was to broaden the general venue requirements in actions against corporations by providing a forum in any judicial district in which the corporate defendant 'is doing business.' See Moore, Commentary on the Judicial Code 193-194 (1949); 1 Barron & Holtzoff, Federal Practice and Procedure 80, at 386 (Wright rev. 1960). It seems manifest that this change was made in order to bring venue law in tune with modern concepts of corporate operations.' / 3/ '3 As the Court of Appeals stated in Transmirra Prods. Corp. v. Fourco Glass Co., 2 Cir., 233 F.2d 885, 887, 'The rationale of this sharp break with ancient formulae is quite obviously a response to a general conviction that it was 'intolerable if the traditional concepts of 'residence' and 'presence' kept a corporation from being sued wherever it was creating liabilities." Although this Court reversed in Fourco, supra, for reasons discussed later (infra, pp. 206-207, 86 S.Ct. pp. 1396-1397), the validity of this general observation was in no way questioned.' 384 U.S. at 204 & n. 3, 86 S.Ct. at 1395.