FRIEDA RADER et al., Plaintiffs, *v.* MANUFACTURERS CASUALTY INSURANCE COMPANY OF PHILADELPHIA, PENNA., et al., Defendants.

Supreme Court, Special Term, New York County, January 30, 1951.

*Abraham H. Simon* for plaintiffs.

*Edward H. Levine* for Manufacturers Casualty Insurance Company of Philadelphia, Penna., and others, defendants.

*Abraham V. Kaplan* for Dorothy Merritt, defendant.

NATHAN, J. This is an action by indemnitors of a bail bond to set aside conveyances and assignments of their collateral, to vacate a judgment in the sum of $50,000 and for other relief against the surety company and its agents or bondsmen.

Plaintiffs are a married couple, naturalized citizens of mature years but little education, who managed to acquire through industry and frugality over a period of years, a modicum of capital assets. The principal defendants are the Manufacturers Casualty Insurance Company, Al Newman and Herman Cowen, doing business as Newman & Cowen, Samuel Salerno, and Damar Agency, Inc., of which Fred Flatow is president.

The evidence adduced at the trial discloses an unfortunate, and in some respects shocking, state of facts. In November, 1949, one George Faucella was indicted with four others, in the Federal Court for the Southern District of New York, on four counts of interstate transportation of counterfeit securities, mail fraud and conspiracy. He was held in $50,000 bail. At that time, Faucella and defendant Merritt, who was known as his wife, lived in a rooming house owned and operated by the plaintiffs. They had been tenants of plaintiffs for a period of fifteen years, during which they had always comported themselves as decent law-abiding citizens, he as a model husband and a reliable man of good habits. At the request of defendant Merritt (who contributed all her property and savings as part

of the indemnity), and without receiving any consideration therefor, plaintiffs agreed to furnish the balance of the indemnity required by the principal defendants for a bail bond. To obtain the bond they were required to pledge two life insurance policies and the deeds to two rooming houses, which comprised all their property and represented their life savings and sole source of income.

On December 1, 1949, plaintiffs went to the office of one of the defendants, and at the request of the bondsmen, they signed numerous documents on printed forms. Among the documents signed by plaintiffs were deeds to the two properties conveying title to defendant insurance company, assignments to the company of the two policies, a confession of judgment for $50,000, and a bail bond application and agreement. They received in return collateral security receipts of the defendant insurance company for the policies and deeds. The bond was then issued and Faucella released on bail. Presumably, each of the principal defendants received substantial consideration for his participation in the writing of the bond.

On December 5, 1949, and before any default occurred, defendants entered judgment in the New York County Clerk's office for the sum of $50,000 against plaintiffs upon their confession. On December 16, 1949, a new indictment on ten counts of unlawfully transporting in interstate commerce forged and counterfeited travelers checks, and conspiracy, was found against Faucella and nineteen others, among them one George Gillett who was not included in the previous indictment, but who was alleged to have been the ringleader and chief conspirator.

Bail of $50,000 for Faucella on the first indictment was permitted to be rewritten to cover the second. Without any notice to plaintiffs of the new indictment and the increased risk inherent therein, defendants rewrote the bond to cover both indictments.

On February 2, 1950, one of the coconspirators disappeared under circumstances indicating he had been murdered, and on the following day his bail was forfeited. On February 4, 1950, Faucella's attorney disclosed to the United States Attorney and to the court that Faucella could not be found and expressed the fear that he had met a fate similar to his coconspirator's. A bench warrant was thereupon issued for Faucella and the surety company was directed to produce him on February 6, 1950. On that date he was not produced and his bail was forfeited. On February 10, 1950, defendant insurance company paid the $50,000 on account of the bail forfeiture. Faucella has

not been seen nor heard of since some time prior to February 4, 1950. Plaintiffs by this action, seek to prevent seizure of their collateral.

The evidence with respect to the execution of the documents by plaintiffs shows that they were hurried and pressed, and that the bondsmen did not take it upon themselves to inform plaintiffs of the gravity of the charges and the known criminal records of Faucella's codefendants. It falls short, however, of establishing that defendants made any false representations of material facts, or that they concealed material facts which they were under a legal duty to disclose. Consequently, plaintiffs have not sustained the burden of proving fraud on the part of the defendants.

Although the rewriting of the bond to cover the second indictment exposed plaintiffs to a greater risk of forfeiture than appeared on the first indictment, the provisions of the bail bond agreement they were required to sign relieved the defendant insurance company of any liability it might otherwise be under. Paragraph sixth of that agreement provides as follows: " Sixth — That no act or omission of the Company in modifying, amending, limiting, or extending the instrument so executed by the Company shall in any wise affect our liability hereunder, nor shall we or any of us be released from this obligation by reason thereof; and we agree that the Company may alter, change or modify, amend, limit or extend said bond or undertaking and may execute renewals thereof, or other and new obligations in its place or in lieu thereof, and without notice to us, notice being expressly waived, and in any such case, we and each of us shall be liable to the Company as fully and to the same extent on account of any such altered, changed, modified, amended, limited or extended instrument, or such renewal thereof, or other or new obligations in its place or in lieu thereof, whenever and as often as made, as fully as if such instrument were described at length herein."

It is clear that plaintiffs did not read this remarkable provision which is one of ten paragraphs of the agreement, all in small print; but they are, nevertheless, bound by it, and cannot now be heard to object to the rewriting of the bond. Furthermore, under the terms of.the agreement of indemnity, the defendants cannot be regarded as co-obligors and are not liable to plaintiffs for contribution in any form. Unfortunately, defendants must therefore prevail.

The court is constrained, however, to comment upon this clear indication of another of the abuses prevalent in the bail bond business. Although evidence before the court does not establish any unlawful acts on the part of these defendants, it demonstrates that a most unsatisfactory and unsavory situation exists. In addition to the collateral furnished by the indemnitors, the bonding company requires its agents to post permanent collateral funds to secure the company against any loss. Thus the bonding company makes its profits without risk of loss. Furthermore, the bondsmen, in their zeal to protect their compulsory financial stakes, resort to sharp practices and exert pressures upon the indemnitors, with the result that undue advantage is taken of naïve people who are good enough and, too often, foolish enough to help others in trouble. In their transactions with these plaintiffs, the principal defendants have been shown to be completely lacking in any appreciation of ethical conduct, as well as any sense of responsibility to others. In the proceedings had herein, such defendants, insisting upon their '' pound of flesh '', have exhibited no understanding of ordinary human decency and fairness. This problem cannot be met by judicial determination, but it might well be a proper subject for legislative or departmental inquiry. A copy of this decision will be forwarded to the Superintendent of Insurance.

Findings of fact and conclusions of law have been waived. Let judgment enter for defendants, without costs.