**Frieda RADER and Paul Rader, Plaintiffs-Appellants,**

v.

**MANUFACTURERS CASUALTY INSURANCE COMPANY OF PHILADELPHIA, PA., Fred Flatow, Abraham Newman and Herman Cowen, individually and as co-partners doing business under the firm name and style of Newman & Cowen, and Samuel Salerno, Defendants-Appellees.**

No. 122, Docket 24242.

United States Court of Appeals Second Circuit.

Argued Jan. 14, 1957.

Decided March 5, 1957.

Abraham H. Simon, Simon & Brand, Brooklyn, N. Y. (Richard S. Lane, New York City, of counsel), for plaintiffs-appellants.

Edward H. Levine and Hyman Herman, New York City (Vernon C. Rossner, New York City, of counsel), for defendants-appellees.

Before MEDINA and HINCKS, Circuit Judges, and LEIBELL, District Judge.

LEIBELL, District Judge.

This is an appeal by plaintiffs from an order of the District Court, dated April 16, 1956, which denied plaintiffs' motion for a preliminary injunction, and

granted defendants' motion to dismiss the complaint on the ground of *res judicata*.

On March 23, 1956, plaintiffs filed their complaint in this Court. Therein they allege that they are seeking relief in equity and in law against exactions being made against them in demands for payment of $50,000, arising out of the forfeiture of two bail bonds of the defendant, Manufacturers Casualty Insurance Company of Philadelphia, Penna., hereinafter referred to as the Surety Company, in this Court. Other defendants named in this action are Fred Flatow; Abraham Newman and Herman Cowen, individually and as co-partners doing business under the name of Newman & Cowen; and Samuel Salerno.

Plaintiffs allege that a first bail bond of $50,000 was given by the Surety Company on December 1, 1949, to obtain the release of George Faucella, who was held in confinement under an indictment of this Court, dated November 18, 1949; that thereafter, a second bail bond of $50,000 was given by the Surety Company which, by leave of the Court, rewrote the first bail bond to cover a second indictment involving George Faucella, dated December 16, 1949. The prisoner was thereupon released on bail.

It is further alleged that on February 6, 1950, the criminal George Faucella failed to appear for trial, whereupon both bail bonds were forfeited. Faucella has not since been located.

Plaintiffs contend that in order that the relief sought may be effective, a proceeding comparable to the former writ of *Scire Facias* be permitted under an order to show cause containing stays of exactions during the pendency of this action.

Plaintiffs allege that they permitted themselves to become indemnitors to the Surety Company for the first bail bond of December 1, 1949, by signing a bail bond application, an indemnity agreement, and a confession of judgment in the amount of $50,000, on a condition precedent that Peter Faucella, a brother of the prisoner there present, and a cousin also, become indemnitors, a condition which was not fulfilled. It is alleged that such condition was imposed in the presence and hearing of the individual named defendants, all of whom are under agreement with the Surety Company as indemnitors to pay individually the loss, if any, sustained by forfeiture of the bail bond then applied for and given. Neither the brother nor the cousin became indemnitors.

Plaintiffs allege that after the forfeiture of the bail, proceedings were had in this Court at the instance of the defendant Surety Company, to avoid the forfeiture, claiming that the prisoner was being forceably detained against his will or had been murdered. It was further urged that the sum of $50,000 be retained by the Clerk of this Court, pending the outcome of the above contentions made by the Surety Company.

It is alleged that plaintiffs were not parties to these proceedings and furthermore, that the rewriting of the December 1, 1949 bail bond so as to cover the second indictment was not authorized; and that Paragraph "Sixth" of the indemnity agreement did not warrant such action.

Paragraph Sixth of the Indemnity Agreement of November 30, 1949, provided:

"That no act or omission of the Company in modifying, amending, limiting, or extending the instrument so executed by the Company shall in any wise affect our liability hereunder, nor shall we or any of us be released from this obligation by reason thereof; and we agree that the Company may alter, change or modify, amend, limit or extend said bond or undertaking and may execute renewals thereof, or other and new obligations in its place or in lieu thereof, and without notice to us, notice being expressly waived, and in any such case, we and each of us shall be liable to the Company as fully and to the same extent on account of any such altered, changed, modified, amended, limited or ex-

tended instrument, or such renewal thereof, or other or new obligations in its place or in lieu thereof, whenever and as often as made, as fully as if such instrument were described at length herein."

Plaintiffs next allege evidentiary matter tending to show or indicate, that the rewriting of the first bail bond to cover both indictments on the part of the defendant "was reckless, improvident and a failure to use ordinary prudence and reasonable care," and that the resultant loss should be chargeable to the defendants.

It is further alleged that on December 5, 1949, before any default had taken place, the defendant, Fred Flatow, as attorney in fact of the Surety Company, entered judgment against the plaintiffs for $50,000, which was based upon their "confession of judgment" dated December 1, 1949. Plaintiffs allege that said judgment for $50,000 was rendered unenforceable on December 16, 1949 when the criminal appeared before this Court and pleaded to the second indictment, and by the rewriting of the bail bond to cover both indictments without the knowledge and consent of plaintiffs; and that therefore the judgment should be vacated.

It is next alleged that the defendants are unjustly retaining plaintiffs' securities and unjustly exercising control over said properties. The securities consist of deeds to plaintiffs' real estate located at 312 East 51st Street and 144–6 East 83rd Street, and two life insurance policies of $5,000 each on the lives of plaintiffs, assignments of which are also withheld.

The complaint also alleges that after this Court had ordered the forfeiture of the two bail bonds the defendants entered into a conspiracy and scheme to fasten the loss on plaintiffs and in consummation of such conspiracy did commit certain acts and did offer false testimony to the Courts and did submit false documents in their planned defense against plaintiffs.

In support of this charge plaintiffs allege that in prior state court actions, the defendants, particularly Fred Flatow, gave false and misleading testimony; to wit, urging before the State Courts that plaintiffs' rights and remedies had been determined in the forfeiture proceedings in this Court; that the defendant Surety Company had paid the loss, it now appearing that the defendants, Newman and Cowen, paid the loss; that defendant Flatow falsely swore that the bail bond application and the indemnity agreement were signed and acknowledged by plaintiffs on November 30, 1949, when in truth and in fact such instruments were signed on December 1, 1949, at the same time the confession of judgment and the deeds to plaintiffs' real estate were signed by plaintiffs, and at the same time the other indemnitor, Dorothy Merritt, then present, also signed as co-indemnitor.

The complaint herein also alleges that in further consummation of the conspiracy, the defendant Flatow in his capacity of attorney at law and as attorney in fact of the Surety Company prepared an agreement dated June 12, 1952, wherein the Surety Company is named as the creditor and possessor of the above judgment, well knowing that the Surety Company was not then rightfully a claimant against plaintiffs. Plaintiffs allege that they signed such instrument under duress and in ignorance of the fact that under the agreements existing between the individual defendants and the Surety Company, each was bound to pay the loss and each was required to contribute towards the payment of the same.[1]

1. The partnership firm of Newman and Cowen, made up of Messrs. Abraham Newman and Hyman Cowen, was the sub-agent or "executing agent" of Damar Agency, Inc. [not a named party to this action], which was the General Agent for defendant, Manufacturers Casualty Insurance Company of Philadelphia, Penna., bail bond department.

Damar Agency, Inc., under its agreement with the Surety Company, dated January 26, 1946, had "the right to ap-

It is alleged that in further consummation of the conspiracy the defendant Flatow caused an assignment of said judgment to be executed by the defendant Surety Company to the defendants, Newman and Cowen, purportedly dated June 16, 1952, "for the purpose of giving verity to the assertion in the aforesaid agreement of June 12, 1952."

Plaintiffs' prayer for relief is that it be decreed that no contract of indemnity exists at all; that if any agreement exists it should be confined to the first indictment and none other; that the inclusion of paragraph "Sixth" in the indemnity agreement did not in fact constitute a part of the contract; that the indemnity agreement did not grant power to defendants to rewrite the bail bond of December 1, 1949 to cover also the indictment of December 16, 1949; that the judgment entered on December 5, 1949, in the amount of $50,000 be held unenforceable; that the agreement of June 12, 1952, be set aside for being procured by duress; that the plaintiffs be entitled to the return of their deeds and their policies of insurance; that any instruments of transfer in the hands of the defendants be declared void; and finally that defendants be enjoined and restrained from in any manner interfering with and disposing of the assets or property of the plaintiffs, and from enforcing collection from plaintiffs under the judgment dated December 5, 1949, except in this Court.

Annexed to the complaint are a bail bond application signed by the plaintiffs, dated December 1, 1949, containing plaintiffs' financial statement; the indemnity agreement signed by plaintiffs on November 30, 1949; a confession of judgment signed by plaintiffs on December 1, 1949, authorizing entry of judgment for the amount of $50,000; and the judgment of December 5, 1949, entered in New York County Clerk's Office.

On March 23, 1956, plaintiffs obtained from Judge Weinfeld an order to show cause, with certain preliminary restraining provisions; and a similar one from Judge Noonan on March 26, 1956. Judge Noonan's order to show cause was returnable on March 29, 1956. Each order provided that "in view of the allegation of financial inability of defendant Newman to respond to any judgment, defendants and those having knowledge and notice of this order be and they are hereby enjoined and restrained from interfering with or disposing of any of the property and assets of the plaintiffs under their control and in their possession."

Annexed to the order to show cause was the affidavit of plaintiffs' attorney, Mr. Simon, wherein, after arguing against the possible defense of "res judicata," he stated that the plaintiffs have already paid to the defendant Newman the sum of $11,300 under the agreement which was wrongfully obtained and signed under duress.[2] He further stated, that the Supreme Court of New York County granted an order enjoining defendants from receiving to them-

point within the territorial limits assigned * * *, one or more sub-agents, by contract in writing, * * *"; however, "The Agent [Damar Agency, Inc.] shall require each sub-agent to indemnify the Company and the Agent and save them and each of them harmless from any and all liability, loss, [etc.] * * * which they may sustain or incur as a result of or in connection with the execution of any bond written by or through the sub-agent or any executing agent appointed at the request of the sub-agent * * *."

The agreement between Damar Agency, Inc., as "General Agent" and New-

man and Cowen, as "Executing Agent," dated also January 26, 1946, provided, among other things, that "The Executing Agent does hereby indemnify the Company [Manufacturers Casualty Insurance Company] and the General Agent and save them and each of them harmless from any * * * liability, loss [etc.] * * * which either may sustain or incur as a result of or in connection with the execution of any bond * * * written by or through the Executing Agent * * *".

2. The complaint does not specifically seek the return of these payments alleged to have been made under duress.

selves the sum of $350.00 a month theretofore paid to Newman and that sum was to be deposited with the Clerk of the State Supreme Court, and that there is now on deposit with said Clerk the sum of $9,450.00. In addition, he claims that defendants have received the sum of $9,300 from Dorothy Merritt, who was also an indemnitor.

Also attached to the order to show cause was the affidavit of plaintiff, Frieda Rader, which stated that she had read the affidavit of her attorney and that the contents therein are true of her own knowledge.

On April 3, defendants herein, except Samuel Salerno (who has not been served) served an affidavit with exhibits attached, in opposition to plaintiffs' motion for an injunction *pendente lite*, stating:

"(a)  Neither the moving papers, nor the complaint states a claim upon which injunctive relief may be granted, since this Court is being asked to declare null and void a judgment of the highest Court of the State of New York;

"(b) It appears on the face of the complaint that the statute of limitations has run against any cause of action purported to be alleged in the complaint."

Defendants alleged that the plaintiffs have tried unsuccessfully in two separate actions in the State Court to annul the judgment entered December 5, 1949, on a confession of judgment dated December 1, 1949.

A trial of the first State Court action was had before Judge Nathan in December 1950. He filed an opinion January 30, 1951, reported in 199 Misc. 911, 103 N.Y.S.2d 235, 237, holding for the defendants. Judge Nathan held that while the evidence with respect to the execution of the documents by plaintiffs shows that they were hurried and pressed, and that the bondsmen did not take it upon themselves to inform plaintiffs of the gravity of the charges and the known criminal records of Faucella's co-

defendants, all that fell short, however, of establishing that defendants made any false representations of material facts, or that they concealed material facts which they were under a legal duty to disclose; and that consequently, plaintiffs did not sustain the burden of proving fraud on the part of the defendants.

As to the rewriting of the bail bond to cover the second indictment, Judge Nathan held, that although the rewriting of the bond exposed plaintiffs to a greater risk of forfeiture, the provisions (Par. "Sixth") of the bail bond indemnity agreement which plaintiffs were required to execute, relieved the defendant Surety Company of any liability it might otherwise be under. "It is clear that plaintiffs did not read this remarkable provision (Par. 'Sixth') which is one of ten paragraphs of the agreement all in small print; but they are, nevertheless bound by it, and cannot now be heard to object to the rewriting of the bond."

Finally in holding against equitable contribution, Judge Nathan stated: "Furthermore, under the terms of the agreement of indemnity, the defendants cannot be regarded as co-obligors and are not liable to plaintiffs for contribution in any form."

Judge Nathan's opinion was affirmed by the Appellate Division, First Dept., Justice Shientag, dissenting without opinion, 278 App.Div. 919, 105 N.Y.S.2d 914; and thereafter was affirmed without opinion by the New York Court of Appeals on January 10, 1952, 303 N.Y. 764, 103 N.E.2d 546.

Defendants state in their affidavits on their motion to dismiss the complaint in the District Court, that after the affirmance by the Court of Appeals, the plaintiffs executed an accord and satisfaction agreement whereby they arranged to pay their obligation over a period of nine years by a down payment and monthly installments at the rate of $350.00 a month. It is alleged that this agreement was negotiated over a period

of five months before it was signed on June 12, 1952.

It is further stated that plaintiffs were paying monthly installments during the period of negotiations, and after executing the above agreement continued to pay for a period of nine months, until in March of 1953, plaintiffs instituted a second State Court action against the defendants, alleging three separate causes of action.

A trial of the second State Court action was had before Judge Walter. In an opinion, Sup., 139 N.Y.S.2d 388, 390, Judge Walter, discussing only the issue of reformation of the indemnity agreement of November 30, 1949, denied plaintiffs any relief, holding: "It seems to me entirely clear that no case for reformation has been established. There was here no trick or device, no violation of any fiduciary relation, no breach of trust or confidence, no misrepresentation or concealment, no mutual mistake, and no mistake by plaintiffs of which defendants took any fraudulent advantage."

The judgment was affirmed without opinion in 1 A.D.2d 799, 149 N.Y.S.2d 220. The Appellate Division (1st Dept.) also denied leave to appeal to the Court of Appeals, 1 A.D.2d 824, 150 N.Y.S.2d 539, and on March 23, 1956, the New York Court of Appeals denied the plaintiffs leave to appeal, 1 N.Y.2d 641, 133 N.E.2d 519.

Defendants further state that after Judge Walter decided against plaintiffs on the merits, the plaintiffs sought to reopen the trial to permit them "to try the remaining issue" with regard to the June 12, 1952 agreement, as provided for in its second cause of action.[3] Leave to reopen was denied. This ended plaintiffs' litigation in the State Courts.

On April 10, 1956, plaintiffs served their reply affidavit in this case and stated therein, in part, that they present new issues here, and "are not attacking a judgment finally determining issues between the parties in a State Court."

Concerning the individual defendant, Fred Flatow, plaintiffs state, that he was not a party defendant in the action tried before Judge Nathan and any allegations of fraud and conspiracy now charged against him are permitted to be proved in this Court.

On April 16, 1956, Judge Palmieri, after having heard argument on April 5, 1956, filed his opinion denying plaintiffs' motion for a preliminary injunction, and granted defendants' motion to dismiss the complaint.

Judge Palmieri held:

"Plaintiffs ask this Court in effect to invalidate the indemnity agreement, a subsequent confession of judgment and a partially liquidated agreement in accord and satisfaction of that judgment. In this motion they seek a preliminary injunction restraining any efforts at collection pending the disposition of their action. Defendants move to dismiss the complaint.

Plaintiffs' claim is barred by the previous adjudication in the New York State Courts. The nature of the State Court litigation may be ascertained from various reported opinions. See Rader v. M[anufacturers] Cas. Co. of Phila., Pa., 1951, 199 Misc. 911, 103 N.Y.S.2d 235, aff[irme]d 278 A.D. 919, 105 N.Y.S. 2d 914, aff[irme]d 1 Dept., 1952, 303 N.Y. [764], 103 N.E.2d 546; Rader v. M[anufacturers] Cas. Ins. Co. of Phila., Pa., 1955, 139 N.Y.S. 2d 388, aff[irme]d 1 A.D.2d 799, [149 N.Y.S.2d 220], app[eal] denied 1956, 1 App.Div.2d 824 [150 N.Y.S.

---

3. Judge Walter did not take up and discuss plaintiffs' second cause of action putting in issue the validity of the June 12, 1952, agreement, because counsel for the plaintiffs, at the trial admitted that this issue was dependent on reformation being granted.

"The Court: Well, then according to your theory the validity of the June, 1952 agreement depends upon whether or not you can succeed in your claim for reformation.

"Mr. McLaughlin: That's right, your Honor."

2d 539], appeal denied [1 N.Y.2d 641, 133 N.E.2d 519] * * *."

On April 25, 1956, plaintiffs filed a motion for reargument, claiming that the trial judge "has overlooked the lack of frankness in the presentation of defendants' counsel, the deliberate withholding from your Honor of the records of this Court dating back to February 6, 1950, * * *, and what amounts to effrontery in wilfully diverting Judge Knox's letter to their purpose to mislead the Court." Faucella's bail had been declared forfeited February 6, 1950, and on February 10, 1950, the $50,000 was paid over to the Clerk of the Court. By reasons of applications to the Court the payment of the money to the United States Treasury by the Clerk of the Court was postponed from time to time; by Judge Bondy to June 30, 1950, and by Judge Knox to September 30, 1950. (Exs. B and C annexed to defendants' opposing affidavits on the motion to dismiss the complaint herein.)

Plaintiffs further urge on this appeal that they should be permitted to amend their complaint herein, as they urged before Judge Palmieri on a motion to reargue. The nature of the proposed amendment does not appear.

On April 27, 1956, plaintiffs filed another motion in the District Court for the appointment "of a Special Master to hear the evidence and report to the Court as to where the truth lies as between the parties hereto, and also to have the matters of difference submitted to the determination of the Court under Rule 57 of the Rules of Civil Procedure, 28 U.S.C. relating to Declaratory Judgments and to have a jury impaneled for the purpose of determining the issues of fact to the end that the Court may be in a position to determine the issues of law and fact in this action."

On May 1, 1956, both motions were referred to Judge Palmieri, by Judge Levet. On May 3, 1956, plaintiffs' attorney served an affidavit "in aid of the motions." On May 10, 1956, Judge Palmieri, by an endorsed memorandum, denied plaintiffs' motion for the appointment of a Special Master, or in the alternative, relief by way of declaratory judgment.

The record and the docket entries do not show what action the trial judge took with respect to plaintiffs' motion for reargument. However, on June 29, 1956, the judge signed an order submitted by the attorney for the defendant, denying plaintiffs' motion for a preliminary injunction and granting defendants' motion to dismiss the complaint. That order was filed July 17, 1956, and in effect constituted a denial of the motion for reargument.

On June 15, 1956, plaintiffs' attorney filed a motion for an order expunging the record of all defamatory matter recited against him. On June 21, 1956, Judge Palmieri denied the motion. Plaintiffs moved for reargument of that motion and that also was denied.

It is intimated in the complaint herein that this Court's jurisdiction is based (1) upon the allegation that the action involves a bond given the United States; and (2) upon the fact that the defendant Surety Company is a citizen of Pennsylvania and the other named defendants are its authorized agents, who conduct the bail bond business and engage in contractual relations with the United States in furnishing bail bonds for the release of persons confined under federal indictments. The citizenship of the agents is not specified.

■ It will be unnecessary to consider the correctness of the District Court's rulings, because a question of jurisdiction is noted[4] which was not raised below. It appears from the allegations of the complaint herein and from certain "exhibits" submitted to

1. In Markert v. Swift Co., 2 Cir., 187 F. 2d 104 at page 107, this Court held: "We are not at liberty to ignore a question of jurisdiction, even though it has not been raised by the parties." In Lang v. Patent Tile Co., Inc., 5 Cir., 216 F.2d 254, the court stated: "Defects of the District Court's jurisdiction which are apparent on the face of the record must be noted by this Court *sua sponte*." See also United States v. Bradford, 2 Cir., 194 F.2d 197, at page 200.

this appellate court on the argument. The jurisdictional question will now be discussed.

The original jurisdiction statutes applicable to Federal District Courts are contained in Title 28, U.S.C. § 1331 through § 1359 inclusive. Of these statutes, only three need be discussed: Section 1331,[5] 1332(a)[6] and 1352.[7]

Section 1331, 28 U.S.C., is inapplicable. For jurisdiction to rest on that section the suit must be one arising under the Constitution, laws or treaties of the United States.

"Not every question of federal law lurking in the background or emerging necessarily places the suit in the class of one arising under the laws of the United States within the meaning of the statute."

"It must really and substantially involve a dispute or controversy in respect of the validity, construction, or effect of such laws, upon the determination of which the result depends. A right or immunity created by the laws of the United States must be an essential element of the plaintiff's cause of action, and the right or immunity must be such that it will be supported if one construction or effect is given to the laws of the United States and will be defeated if another construction or effect is given. * * *" Anderson v. Bingham & Garfield R. Co., 10 Cir., 169 F.2d 328, 329, 14 A.L. R.2d 987.

The plaintiffs do not put in issue the validity, construction, or effect of any law of the United States.

Section 1352 is also inapplicable. This is not an action "on a bond" executed under the laws of the United States within the meaning of the statute. Mudd v. Teague, 8 Cir., 220 F.2d 162; Westark Production Credit Ass'n v. Fidelity & Deposit Co., D.C., 100 F.Supp. 52. Plaintiffs, by their present action attack the validity of the indemnity agreement dated November 30, 1949, the confession of judgment dated December 1, 1949, and the agreement of June 12, 1952. None of these were required to be executed by any law of the United States in connection with the giving of a surety bail bond. The various agreements under attack are collateral arrangements of the surety and indemnitors and were executed to afford protection to the defendant surety company and its agents, and did not inure to the benefit of the United States.

For Section 1332(a) to be effective, it must appear from the record that all parties on one side are of citizenship diverse to that of those on the other side, Salem Trust Co. v. Manufacturer's Finance Co., 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628. The diversity of citizenship requisite to federal jurisdiction exists where the defendants are all citizens of states other than that of the plaintiff. Camp v. Gress, 250 U.S. 308, 39 S.Ct. 478, 63 L.Ed. 997.

Plaintiffs herein are citizens and residents of the State of New York. The only allegation of diversity in the complaint is that the defendant Casualty Company is a citizen of Pennsylvania. Nothing is said about the citizenship of the other defendants. But it appears from certain exhibits before this court that the defendants, Abraham Newman and Herman Cowen, individually and as co-partners doing business under the firm name of Newman and Cowen, are

---

5. Title 28 U.S.C. § 1331 states:
   "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."

6. § 1332(a) provides in part:
   "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs, and is between:
   (1) Citizens of different States:"

7. § 1352 reads:
   "The district courts shall have original jurisdiction, concurrent with State courts, of any action *ON A BOND* executed under any law of the United States." [Emphasis added.]

·citizens and residents of New York. As between these defendants and the plaintiffs there is no diversity of citizenship. There is no allegation or proof as to the citizenship of defendant. Fred Flatow. All that appears is that he is President of the firm of Damar Agency, Inc. (general agent of Manufacturers Casualty Insurance Company), a New York corporation. Jurisdiction cannot be conferred by a voluntary appearance in the action. Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338; Molnar v. National Broadcasting Co., 9 Cir., 231 F.2d 684, 687, citing in a footnote Columbia Digger Co. v. Rector, D.C., 215 F. 618, 622. The defendant, Samuel Salerno, was never served with process so his citizenship need not be considered.

■ Although there exists diversity of citizenship between the plaintiffs and the defendant surety company, a Pennsylvania corporation, nevertheless the Federal Court in view of plaintiff's requested prayer for relief as to the indemnity agreement of November 30, 1949, the confession of judgment of December 1, 1949, the judgment entered thereon on December 5, 1949, and the plaintiffs' collateral, is obliged to dismiss the complaint against the surety company also. Newman and Cowen, whose presence in the case destroys diversity jurisdiction, are indispensable parties to the relief sought by plaintiffs in this action. They are the assignees of the judgment of December 5, 1949, and of the rights under the June 12, 1952, accord and satisfaction agreement, and of the plaintiffs' collateral mentioned therein. Newman and Cowen became assignees for a valuable consideration. They actually paid the $50,000 forfeited bail. Jurisdiction over Newman and Cowen would be a condition to the validity of any judgment entered herein in favor of the plaintiffs.

■ By virtue of the assignment Newman and Cowen possess a present property or pecuniary interest in the basic subject matter of this action. This is sufficient to constitute them "indispensable" parties, as regards plaintiffs' cause of action and prayer for relief therein. For a discussion of the cases setting forth the tests to be applied in determining whether a party is an indispensable party see Photometric Products Corporation v. Radtke, D.C., 17 F.R.D. 103, 109. A recent case is Lumbermen's Mutual Casualty Co. v. Elbert, 348 U.S. 48, 52, 75 S.Ct. 151, 99 L.Ed. 59. In Gramatan-Sullivan, Inc., v. Koslow, 2 Cir., 240 F.2d 523, 525, Judge Hand speaking for this Court held: "Ordinarily, 'indispensable' parties are those whose presence is necessary to protect them from injustice to them that will arise out of the judgment." [8]

Newman and Cowen, as assignees of the June 12, 1952 agreement, have such a prime interest in this controversy that without them as parties the rendition of a binding final judgment or decree by this court could not be made. Any order of this court requiring that the collateral or security deposited by the plaintiffs be returned to plaintiffs would be ineffective, it appearing that the collateral is in the possession or control of Newman and Cowen, as assignees, over whom this court does not have jurisdiction.

Further, any holding by this court with reference to the validity of the indemnity agreement of November 30, 1949, out of which came plaintiffs' confession of judgment dated December 1, 1949, which in turn led to the execution of the June 12, 1952 agreement, would not be binding on Newman and Cowen.

The District Court's order granting a dismissal of the complaint herein was based on a determination that the plaintiffs' claims are barred because of the previous adjudications in the New York state court actions. Lack of jurisdiction was not raised in the District Court. We have noted it for the reasons hereinabove

8. See also, Kentucky Natural Gas Corp. v. Duggins, 6 Cir., 165 F.2d 1011, 1015 and Grant County Deposit Bank v. McCampbell, 6 Cir., 194 F.2d 469, 472, 31 A.L.R. 2d 909.

stated. Accordingly, the case will be remanded to the District Court with instructions to dismiss the complaint for lack of jurisdiction of the action.